**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DANIEL J. COHN,                          :          CIVIL CASE NO.
      Plaintiff,                      :
                                   :
VS.                                      :
                                   :
                                 :
STAMFORD HEALTH, INC.,                   :
      Defendant.                      :          FEBRUARY  26, 2019

<u>**COMPLAINT**</u>

## I.   PRELIMINARY STATEMENT

1.   The plaintiff, Daniel J. Cohn, brings this action against his former employer, the defendant, Stamford Health, Inc., pursuant to Title VII of the Civil Rights Act of 1964, as amended, in which he seeks declaratory, injunctive and equitable relief, and compensatory damages, and costs and attorney fees for the hostile work environment to which he was subjected, which was permeated by derogatory comments of a racial, ethnic and sexual nature created by the plaintiff's supervisor.

2.   Additionally, the plaintiff, Daniel J. Cohn, brings this action against his former employer, the defendant, Stamford Health, Inc., pursuant to the Connecticut Fair Employment Practices Act, §46a-60(b)(1) in which he seeks declaratory, injunctive and equitable relief, and compensatory damages, and costs and attorney fees for the hostile work environment to which he was subjected, which was permeated by derogatory comments of a racial, ethnic and sexual nature created by the plaintiff's supervisor.

II.     **JURISDICTION**

3.  This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e,

    et seq., and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

4.  Jurisdiction is invoked pursuant to Title 28 U.S.C. § 1331, Title 28 U.S.C. §

    1343(a)(3), Title 28 U.S.C. § 1343(a)(4), Title 28 U.S.C. § 2201(a), and Title 42

    U.S.C. §2000e-5(f).

5.  All conditions precedent to jurisdiction under Section 706 of Title VII of the Civil

    Rights Act of 1964, Title 42 U.S.C. §2000e-5(f)(3), have occurred or have been

    complied with in the following manner:

    i.   A charge of employment discrimination on the basis of hostile work

         environment leading to the plaintiff's constructive discharge was filed with

         both the State of Connecticut Commission on Human Rights and

         Opportunities and with the United States Equal Employment Opportunity

         Commission, which filing to State of Connecticut Commission on Human

         Rights and Opportunities was within 180 days, and with the United States

         Equal Employment Opportunity Commission within 300 days of the

         commission of the unlawful employment practices alleged therein;

    ii.  On February 5, 2019, the plaintiff was issued a "Dismissal and Notice of

         Rights " by the United States Equal Employment Opportunity Commission.

         *Exhibit 1.*

    iii. On December 11, 2018, the plaintiff was issued a "Release of Jurisdiction"

2

by the State of Connecticut Commission on Human Rights and

Opportunities. *Exhibit 2.*

6.   Declaratory, injunctive, compensatory and equitable relief is sought pursuant to Title

28 U.S.C. §2201, §2202 and Title 42 U.S.C. §2000e-5(g).

7.   Costs and attorney fees may be awarded pursuant to Title 42 U.S.C. §2000e-5(k),

and Title 42 U.S.C. §1988.

**III.   VENUE**

8.   This action properly lies in the District of Connecticut pursuant to Title 42 U.S.C.

§2000e-5(f)(3), because the unlawful employment practices of which the plaintiff

complains were committed in this judicial district.

**IV.   PARTIES**

9.   The plaintiff is a citizen of the United States and resides in the State of Connecticut.

10. The plaintiff is an "employee" as defined by Title VII of the Civil Rights Act of 1964,

as amended.

11. The defendant is a non-stock corporation organized and existing under the laws of

the State of Connecticut.

12. The defendant employs more than fifteen individuals.

13. The defendant is a person within the meaning of Section 701(a) of Title VII of the

Civil Rights Act of 1964, Title 42 U.S.C. §2000e(a).

14. The defendant is an employer within the meaning of Section 701(b) of Title VII of the

Civil Rights Act of 1964, Title 42 U.S.C. §2000e(b).

V.      **STATEMENT OF FACTS**

15. On or about January 15, 2018, the defendant hired the plaintiff as its Clinical Contracts Administrator.

16. On March 5, 2018, the plaintiff resigned from his employment with the defendant because of the severe and pervasive harassment to which he was subjected by his supervisor, which created a hostile work environment within which he was forced to work.

17. During the plaintiff's employment with the defendant, John Moreno ("Moreno") was the Executive Director of the defendant's Materials Management Department.

18. During the plaintiff's employment with the defendant, John Piper ("Piper"), the defendant's Purchasing Manager, was the plaintiff's immediate supervisor.

19. From the very start of his employment with the defendant, Moreno subjected the plaintiff to a hostile work environment based on race, sex and ethnicity.

20. From the beginning of the plaintiff's employment, and continuing until his constructive discharge, the plaintiff was subjected to unwelcomed advances and comments of an overt sexual nature by his supervisor, Moreno.

21. The defendant knew of Moreno's propensity of making advances and comments of a sexual nature to its employees and took no meaningful action to prohibit Moreno's behavior.

22. Before he commenced his employment with the defendant, the plaintiff was interviewed by Moreno on December 12, 2017, during which interview, Moreno spent considerable

time talking about drinking and, specifically, different types of alcohol, repeatedly asking

the plaintiff if he drank, asserting that "we work hard, and play hard."

23. On two different occasions, during the week of February 12, 2018, Moreno asked the

plaintiff, "when are we going out drinking together, just the two of us."

24. Repeatedly throughout February 2018, Moreno would ask the plaintiff to take a ride with

him in his car.

25. Sometime during the week of January 29, 2018, the week preceding Super Bowl 2018,

while Piper and the plaintiff were in Moreno's office with Moreno, Moreno showed the

plaintiff a video commercial featuring Tom Brady getting a massage and receiving a kiss

from his son, after which Moreno asked the plaintiff in a salacious manner what he

thought about the video and how it made him feel.

26.  On or around February 27, 2018, Moreno, while in his office with the plaintiff, told the

plaintiff that he had "impure thoughts" about him and that he missed looking at him.

27. On or around February 28, 2018, Moreno once again told the plaintiff that he had impure

thoughts about him.

28. Later that same day, Moreno asserted that "thankfully, I didn't have another impure

thought you" referring to the plaintiff.

29. On March 1, 2018, Moreno became more aggressive in making advances toward the

plaintiff, moving on to physical touching of the plaintiff.

30. On March 1, 2018, Moreno touched the plaintiff on the shoulder without a legitimate

reason, and then lightly punched the plaintiff's arm.

5

31. Moreno, at least several times a week, would make noises at the plaintiff by pursing his lips in a sexually demeaning manner and telling the plaintiff that his actions were meant to convey his feelings about the plaintiff.

32. Moreno would often leer into the plaintiff's office employing a facial expression and body pose in sexually suggestive and menacing manner.

33. The plaintiff was emotionally traumatized by Moreno's advances, physical touching, and commentary

34. During the week of February 26, 2018, Moreno told the plaintiff that if he could fire his black secretary, Jackie, and replace her with a young blond, long-legged, white woman and get away with it, he would.

35. Moreno told the plaintiff that his executive assistant, Jackie, was the size of a "whale" when he first went to work for the defendant.

36. On Monday, March 5, 2018, Moreno loudly explained that "we don't need a dago" in this department.

37. The plaintiff was repelled by the racist, ageist, and ethnic remarks made by Moreno.

38. Throughout the plaintiff's employment, Moreno constantly belittled the appearance of coworkers, especially women, often remarking that they looked "terrible", had "put on weight", were "fat", and "should wear more make-up."

39. Moreno would often sexually diminish the female employees, talking about them and their outfits in a sexually disparaging manner.

40. Piper, was present for and witnessed most of Moreno's demeaning, sexually explicit, and racially and gender degrading conduct.

41. On Monday, March 5, 2018, because he could no longer work in the hostile environment created by Moreno, and tolerated by Piper, the plaintiff tendered his resignation to Piper.

42. The plaintiff responded to Piper's inquiry and stated that the reason he was resigning was because of the hostile environment created by Moreno, and the harassment to which he had been subjected by Moreno.

43. Immediately after resigning, the plaintiff was asked to meet with Sal Mancino, the defendant's director of human resources and Diana Espinosa, a human resources partner.

44. During the meeting, the plaintiff informed Mancino and Espinosa of the hostile environment created by Moreno, and the harassing behavior to which he had been subjected by Moreno, compelling him to submit his resignation.

45. On March 22, 2018, Piper left the plaintiff a voicemail informing him of some "recent new developments at Stamford" and asked the plaintiff if he would return his call.

46. On returning Piper's telephone call, the plaintiff was informed by Piper that Moreno was no longer working for the defendant, and would the plaintiff be open to returning to his former position.

47. The plaintiff informed Piper that he was traumatized by his experience with the defendant but would consider returning to his former employment.

48. On March 26, 2018, Steve Sakovits, the defendant's chief information officer, contacted the plaintiff by text message and asked if he could call plaintiff; plaintiff responded yes, Sakovits then called the plaintiff and spoke about plaintiff returning to his employment.

49. On March 27, 2018, the plaintiff spoke with Piper, at Piper's request.

50. During the conversation he had with Piper, the plaintiff expressed certain conditions under which he would return to his former employment with the defendant.

51. Piper assured the plaintiff that his conditions for returning to his former position were reasonable but that he would have to convey them to Mancino for a decision.

52. On March 28, 2018, Mancino telephoned the plaintiff and told him that the defendant had decided not to offer the plaintiff reinstatement to his position, having decided to go in a "different" direction."

53. The plaintiff has suffered financially because of the hostile work environment and harassment to which he had been subjected.

54. The plaintiff has suffered financially because of his constructive discharge.

55. The plaintiff has suffered emotional distress because of the harassment to which he was subjected and the hostile work environment within which he was made to work.

56. The plaintiff has suffered emotional distress because of his constructive discharge.

57. The defendant did not extend an offer of re-employment, unconditional or otherwise, to the plaintiff.

58. The defendant never took meaningful steps to prohibit Moreno from behaving in the
sexually harassing manner to which he subjected the plaintiff, nor did it prevent Moreno
from making the racial and ethnic slurs and derogatory comments in the workplace.

59. The actions of Moreno created a pervasive and hostile work environment characterized
by unlawful harassment of a sexual nature directed by Moreno at the plaintiff, as well as
conduct of a gender, racial and national origin demeaning nature, which permeated the
plaintiff's workplace while working for the defendant.

60. A reasonable person in the plaintiff's position would find the conduct of Moreno to be
highly offensive.

61. A reasonable person in the plaintiff's position would find that the conduct of Moreno
would substantially interfere with his or her job performance.

62. After the plaintiff informed the defendant on March 5, 2018, of the sexual harassment
and hostile work environment to which he was subjected, including the sexually
degrading behavior to which he was subjected by Moreno, the defendant took no
meaningful action to address the plaintiff's complaints.

63. Because the defendant took no meaningful steps to address the sexually, racially, and
ethnically hostile work environment in which the plaintiff was made to work, and of
which the defendant was aware based on its knowledge of Moreno's propensity for such
illicit conduct, the plaintiff was forced to quit his employment with the defendant.

64. The defendant violated the provisions of Connecticut General Statutes § 46a-60(b)(1),
when it allowed, and did not address the sexually, racially and ethnically hostile work

environment to which the plaintiff was subjected to exist of which the defendant was aware based on its knowledge of Moreno's propensity for such illicit conduct.

65. From the beginning of his employment with the defendant, the plaintiff was subjected to a sexually degrading hostile work environment.

66. Because of the degrading hostile work environment to which he was continually subjected from the very beginning of his employment with the defendant, the plaintiff resigned from his position with the defendant on March 5, 2018.

67. Moreno's degrading behavior was persistent throughout the plaintiff's employment with the defendant; he would continually make demeaning comments of a racial, gender and ethnic nature.

68. The plaintiff was subjected to a hostile working environment of a sexually harassing nature as well as being subjected to the hostile work environment caused by Moreno's incessant racial, gender, and ethnic based derogatory comments to the point such that his working conditions become so intolerable that a reasonable person in the plaintiff's position would have felt compelled to resign.

69. The plaintiff's resignation in the face of sexual harassment to which he had been subjected as well as being made to work in a hostile environment caused by Moreno's incessant racial, gender, and ethnic based derogatory comments was tantamount to an actual discharge.

**VI.    FIRST CAUSE OF ACTION (Unlawful Discrimination in Violation of Title VII of The Civil Rights Act Of 1964)**

70-138. The plaintiff realleges and incorporates by reference paragraphs 1-69.

139.    The actions of Moreno created a pervasive hostile work environment characterized by unlawful harassment directed by Moreno at the plaintiff because of the plaintiff's gender and permeated the workplace to which the plaintiff was assigned while working for the defendant.

140.    Moreno's behavior in continuously making racially, gender and ethnic demeaning comments about employees with whom the plaintiff worked, contributed to the hostile work environment within which the plaintiff was forced to work.

141.    A reasonable person in the plaintiff's position would find the conduct of Moreno to be highly offensive.

142.    A reasonable person in the plaintiff's position would find that the conduct of Moreno would substantially interfere with his or her job performance.

143.    Although Piper was present and witnessed the conduct of Moreno, and the human resources department had knowledge of Moreno's propensity for such behavior, the defendant took no meaningful action to address Moreno's offensive conduct.

144.    The plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged from his treatment by the defendant unless the defendant is enjoined by this Court.

11

145.   The plaintiff is now and will continue to suffer emotional distress as a direct result of the unlawful harassment to which he was subjected and the hostile environment in which he was made to work.

146.   The plaintiff has suffered economic injury as a direct result of the defendant's unlawful harassment and the hostile environment in which the plaintiff was made to work, and the plaintiff's constructive discharge.

147.   The plaintiff was subjected to unlawful sexual harassment and a hostile work environment which the defendant failed to address.

148.   The defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended, when it allowed the plaintiff to be subjected to a hostile work environment created by Moreno's racist, gender and ethnic debasing behavior, which resulted in the constructive discharge of the plaintiff.

149.   The defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended, when, through its inaction, it allowed Moreno to sexually harass the plaintiff.

150.   The defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended, when, through its inaction, it allowed the plaintiff to be subjected to a hostile work environment.

**VII.    SECOND CAUSE OF ACTION (Unlawful Discrimination in Violation of Title VII of The Civil Rights Act Of 1964)**

150-218. The plaintiff realleges and incorporates by reference paragraphs 1-69.

12

219.   The actions of Moreno created a pervasive hostile work environment characterized by unlawful harassment directed by Moreno at the plaintiff because of the plaintiff's gender and permeated the workplace to which the plaintiff was assigned while working for the defendant.

220.   Moreno's behavior in continuously making racially, gender and ethnic demeaning comments about employees with whom the plaintiff worked, contributed to the hostile work environment within which the plaintiff was forced to work.

221.   A reasonable person in the plaintiff's position would find the conduct of Moreno to be highly offensive.

222.   A reasonable person in the plaintiff's position would find that the conduct of Moreno would substantially interfere with his or her job performance.

223.   Although Piper was present and witnessed the conduct of Moreno, and the human resources department had knowledge of Moreno's propensity for such behavior, the defendant took no meaningful action to address Moreno's offensive conduct.

224.   The plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged from his treatment by the defendant unless the defendant is enjoined by this Court.

225.   The plaintiff is now and will continue to suffer emotional distress as a direct result of the unlawful harassment to which he was subjected and the hostile environment in which he was made to work.

226.    The plaintiff has suffered economic injury as a direct result of the defendant's unlawful harassment and the hostile environment in which the plaintiff was made to work, and the plaintiff's constructive discharge.

227.    The plaintiff was subjected to unlawful sexual harassment and a hostile work environment which the defendant failed to address.

228.    The defendant violated the provisions of the Connecticut Fair Employment Practices Act, when it allowed the plaintiff to be subjected to a hostile work environment created by Moreno's racist, gender and ethnic debasing behavior, which resulted in the constructive discharge of the plaintiff.

229.    The defendant violated the provisions of the Connecticut Fair Employment Practices Act when, through its inaction, it allowed Moreno to sexually harass the plaintiff.

230.    The defendant violated the provisions of the Connecticut Fair Employment Practices Act when, through its inaction, it allowed the plaintiff to be subjected to a hostile work environment.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

i.    Declare the conduct engaged by the defendant to be in violation of the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, and/or the Connecticut Fair Employment Practices Act;

ii. Award plaintiff the equitable relief of lost pay and benefits, together with prejudgment interest for the entire period;

iii. Award the plaintiff the equitable relief of front pay until he reaches retirement eligibility;

iv. Award plaintiff compensatory damages;

v. Award plaintiff costs and attorney fees; and

vi. Grant such other and further relief as the Court may deem just and proper.

**THE PLAINTIFF REQUESTS A TRIAL BY JURY.**

THE PLAINTIFF – DANIEL J. COHN

BY/s/ Thomas W. Bucci
Thomas W. Bucci
Fed. Bar #ct07805
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT  06604
Tel: (203) 366-3939
Fax: (203) 337-4588
thomaswbucci@outlook.com

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

EXHIBIT

1

ALL-STATE LEGAL®

| To: | Daniel J. Cohn<br>3995 Park Avenue<br>Fairfield, CT 06825 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16A-2018-01411** | **Amon L. Kinsey, Jr.,**<br>**Supervisory Investigator** | **(617) 565-3189** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other *(briefly state)*     **Charging Party is pursuing claims in another forum.**

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Kenneth An*

**Feng K. An,**
**Area Office Director**

February 5, 2019

*(Date Mailed)*

Enclosures(s)

cc:

STAMFORD HEALTH, INC.
One Hospital Plaza
P.O. Box 9317
Stamford, CT 06904

Thomas W. Bucci, Esq.
WILLINGER WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT 06604



# STATE OF CONNECTICUT
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Daniel J. Cohn
**COMPLAINANT**                                    CHRO No. 1820515

vs.                                                EEOC No. 16A-2018-01411

Stamford Health, Inc.
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:** 12/11/2018

_____
Tanya A. Hughes, Executive Director

Service:
Complainant's attorney: tbucci@wwblaw.com
Respondent's attorney: Beverly.Garofalo@jacksonlewis.com